UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:21-CR-38-D

UNITED STATES OF AMERICA, )
)
v. )
)
JEREMY CHAMBERS )
)
Defendant. )
)

## CRIMINAL INFORMATION

The United States charges:

### GENERAL ALLEGATIONS

1. Caledonia Correctional Institution ("Caledonia") is a prison located in Halifax, North Carolina, and is part of the North Carolina Department of Corrections ("DOC"). DOC falls under the umbrella of the North Carolina Department of Public Safety ("DPS").

2. DPS policies prohibit employees from engaging in certain conduct, including:

   a. Making gifts or performing personal services for inmates;

   b. Conversing with inmates via telephones;

   c. Selling or giving inmates any intoxicating drink, barbiturate or stimulant drug, or narcotic;

   d. Giving inmates tobacco or mobile cellular devices; and

   e. Possessing, using, or distributing tobacco products, paraphernalia, or lighting devices while on the grounds of a facility.

DPS policies further provide that "[i]f an employee is contacted by the family or close associates of an inmate, the employee will report this fact to his superior at the earliest practicable time."

3. Defendant JEREMY CHAMBERS was a Correctional Officer working at Caledonia, where his responsibilities included supervising inmates and ensuring a safe, secure prison operation. By virtue of his position at Caledonia, CHAMBERS was a DPS employee and public official.

## COUNT ONE
### (Conspiracy to Violate the Travel Act)

4. Paragraphs 1 through 3 are re-alleged and incorporated herein by reference.

5. From in and around 2017 through in and around 2019, in the Eastern District of North Carolina and elsewhere, the defendant, JEREMY CHAMBERS, did knowingly and intentionally conspire with others to use one or more facilities in interstate and foreign commerce with intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on, of one or more unlawful activities, to wit, Bribery of officials, in violation of N.C. Gen. Stat. Ann. § 14-217(a), and thereafter to perform acts to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on, of such unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3).

### PURPOSE OF THE CONSPIRACY

6. The purpose of the conspiracy was for CHAMBERS, in exchange for payment, to use his position as a public official to take official action and act in violation of his lawful duty by smuggling contraband into Caledonia.

### MANNER AND MEANS

7. The manner and means of the conspiracy included, but were not limited to, the following:

a. CHAMBERS and his co-conspirators communicated with each other by cellular telephone to, among other things, schedule in-person meetings where CHAMBERS would obtain contraband from suppliers connected to Caledonia inmates;

b. Suppliers provided contraband to CHAMBERS, and CHAMBERS used his position as a public official to engage in official acts and act in violation of his lawful duty by bringing the contraband into Caledonia in exchange for payments;

c. The contraband that CHAMBERS smuggled into Caledonia included, but was not limited to, marijuana, tobacco, synthetic cannabinoids, and Suboxone;

d. CHAMBERS put the contraband under the sole inserts of his boots and then either placed the contraband in a closet at Caledonia or put the contraband in a toilet paper roll to be passed to the intended inmate-recipient;

e. CHAMBERS generally charged between approximately $100 and approximately $500 to smuggle contraband into Caledonia, and CHAMBERS received the payments in cash and via Cash App, a mobile application that allows users to transfer money to one another.

## OVERT ACTS

8. In furtherance of the conspiracy, and to accomplish its purpose, one or more members of the conspiracy committed or caused to be committed the following overt acts in the Eastern District of North Carolina:

a. In late 2017 or early 2018, CHAMBERS met a relative of Inmate 1 who provided CHAMBERS with tobacco to smuggle into Caledonia for Inmate 1 in exchange for payment. The relative also provided CHAMBERS with $300 in cash.

3

b. In late 2017 or early 2018, CHAMBERS again smuggled contraband into Caledonia for Inmate 1, this time in exchange for $150.

c. On or about February 20, 2018, CHAMBERS was caught trying to smuggle a small amount of tobacco into Caledonia for personal use.

d. From approximately June 2019 through approximately September 2019, CHAMBERS smuggled contraband into Caledonia for Inmate 2. On one occasion, CHAMBERS met a relative of Inmate 2 who provided CHAMBERS with tobacco and tobacco mixed with synthetic cannabinoids to deliver to Inmate 2 in exchange for payment. The relative also provided CHAMBERS with $300 in cash. Because of the large amount of contraband, CHAMBERS had to break it up and smuggle it into Caledonia on two to three separate occasions.

e. From approximately April 2019 through approximately September 2019, CHAMBERS smuggled contraband into Caledonia for Inmate 3. On four to five occasions, CHAMBERS met a relative of Inmate 3 who provided CHAMBERS with tobacco and/or Suboxone to smuggle into Caledonia for Inmate 3 in exchange for payment. The relative also provided CHAMBERS with $500 in cash on the first occasion and $300 in cash on the other occasions.

f. In approximately April or May 2019, CHAMBERS smuggled tobacco into Caledonia for Inmate 4. CHAMBERS was not paid for doing so.

g. In approximately June 2019, CHAMBERS twice smuggled tobacco into Caledonia for Inmate 5 in exchange for payment. CHAMBERS received $150 via Cash App on the first occasion and $100 via Cash App on the second.

4

h. In approximately August 2019, CHAMBERS met an associate of Inmate 6 who provided CHAMBERS with contraband to smuggle into Caledonia for Inmate 6 in exchange for payment. CHAMBERS received between $30 and $60 in cash, and a total of $180 via Cash App. CHAMBERS was told that the package provided by Inmate 6's associate contained tobacco but believed the package also may have contained synthetic cannabinoids or marijuana.

i. In approximately September 2019, CHAMBERS was paid $200 via Cash App to purchase tobacco and smuggle it into Caledonia for Inmate 7.

j. In 2019, CHAMBERS was paid $100 via Cash App to purchase tobacco and smuggle it into Caledonia for Inmate 8.

All in violation of Title 18, United States Code, Section 371.

Date: 5/18/21

COREY R. AMUNDSON
Chief
Public Integrity Section
Criminal Division
U.S. Department of Justice

By: *Rebecca Schuman*
Rebecca M. Schuman
Lauren E. Britsch
Trial Attorneys
Public Integrity Section